*NOT FOR PUBLICATION*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **TERRENCE T. SINGLETON,** | **Civil Action No. 15-2973 (FLW)** |
| **Petitioner,** | |
| **v.** | **OPINION** |
| **STATE OF NEW JERSEY, et al.,** | |
| **Respondents.** | |

**WOLFSON, United States District Judge**:

## I.      INTRODUCTION

Petitioner Terrence T. Singleton ("Petitioner") brings the instant *pro se* petition for a writ of habeas corpus to challenge his state court conviction pursuant to 28 U.S.C. § 2254.  (Pet., ECF No. 1.)  Respondents State of New Jersey and the Attorney General of the State of New Jersey oppose the petition.  (Answer, ECF No. 7.)  For the reasons stated herein, the Court denies the petition and also denies a certificate of appealability.

## II.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Petitioner was involved in a series of four taxicab robberies that occurred in Trenton, New Jersey in September of 2001.  *See, e.g.*, *State v. Singleton*, Docket No. A-5293-03T4, 2005 WL 3556426, at *1 (N.J. Sup. Ct. App. Div. Dec. 30, 2005).  Petitioner was charged in an eleven-count indictment with various crimes related to the alleged robberies he committed against: (i) Theresa Colon (*see* Indictment No. 02-05-0692I at Counts One and Two, ECF No. 7-1); (ii) Octavio Collazzo (*see id.* at Counts Ten and Eleven); (iii) Mohammad Islam (*see id.* at Counts Three and Four); and (iv) Jamie Ramirez.  (*See id.* at Counts Five through Eight.)

1

Petitioner was also charged with unlawfully possessing a firearm. (*See id.* at Count Nine.) In the

opinion affirming Petitioner's conviction on direct appeal, the New Jersey Superior Court,

Appellate Division, summarized the relevant facts regarding the victims' pretrial identifications

of Petitioner:[1]

> At a limited pretrial *Wade*[2] hearing held on August 19, 2003, Detective Pollard [of the Trenton Police Department] testified that on September 24, 2001, an anonymous tip was received on the police hotline that a person with the nickname "Tyree" was involved in a series of four taxicab robberies that had occurred in Trenton in the previous nine days. [Detective] Pollard entered that name into the Trenton Police Computer Picture Link System (PLS) and came up with the name and photograph of Terrance "Tyree" Singleton. [Detective] Pollard created a photograph array of eight similar looking men, including [Petitioner], and asked Theresa Colon, one of the victim taxicab drivers, to come to the police station to look at the photo array to see if she could make an identification.
>
> On October 11, 2001, Detective Sutphin showed the eight photographs to [Ms.] Colon one at a time and [Ms.] Colon positively identified [Petitioner] as the man who robbed her, and she signed and dated [Petitioner's] photograph as a record of the identification. Later that day, Detective Nutter prepared another eight-photograph line-up and showed it to victim Mohammed Islam, again showing the photographs one at a time. [Mr.] Islam was unable to make an identification.
>
> On September 23, 2002, Detective Fox provided another photographic line-up to victim Octavio Collazzo, following the Attorney General's guidelines for out-of-court identification procedures. [Mr.] Collazzo identified [Petitioner] as the robber stating that he was 65% to 75% sure in his identification. [Detective] Fox also showed the line-up to victim Jaime Ramirez who was unable to make an identification.
>
> At the conclusion of [Detective] Pollard's pretrial testimony, the court determined that a full *Wade* hearing was not necessary. The court ruled that [Petitioner] failed

---

[1]   State court factual findings are presumed correct unless rebutted by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). As Petitioner has not rebutted the factual findings of the Superior Court of New Jersey, this Court will rely on those findings.

[2]   "The purpose of a *Wade* hearing is to determine whether identification testimony should be suppressed because the manner in which the identification of the suspect was obtained was unduly suggestive." *Herrill v. Ricci*, No. 2:10-cv-3575 (ES), 2016 WL 1183176, at *18 (D.N.J. Mar. 28, 2016) (citing *United States v. Wade*, 388 U.S. 218, 242 (1967)). "The hearing is made outside the presence of a jury, and concerns not the in-court identification, but only the pre-trial identification." *United States v. Stevens*, 935 F.2d 1380, 1386 (3d Cir. 1991) (citation omitted).

to establish a threshold showing of impermissible suggestiveness in the out-of-court identifications by [Ms.] Colon and [Mr.] Islam. As to the Collazzo and Ramirez line-ups, the court, prosecutor and [Petitioner] all agreed that since the Attorney General's guidelines had been followed, there was no issue of suggestiveness with respect to the identification procedures.

*Singleton*, 2005 WL 3556426, at *1–2.

The Appellate Division thereafter summarized the robbery victims' subsequent trial testimony:

At trial, [Ms.] Colon testified that on the morning of September 15, 2001 she picked up a customer, who she later identified as [Petitioner], with two other passengers already occupying her cab. After dropping the original two passengers off, [Ms.] Colon drove [Petitioner] to Vine Street where he asked [Ms. Colon] to pull over. [Petitioner] then turned the key in the ignition to stop the engine and put his hand into his hooded sweatshirt. [Ms.] Colon stated that [Petitioner] appeared to have a gun and that he threatened to kill her unless she gave him all of her money. After [Petitioner] grabbed her money, estimated to be between $150 to $200, he exited the cab and ran down an alleyway to East Paul Street.

[Ms.] Colon further testified to another cab robbery occurring ten days later, the victim being [Mr.] Collazzo, also an employee of [Ms.] Colon's cab company. When [Mr.] Collazzo called for help, [Ms.] Colon drove to his location on Fountain Avenue and saw [Mr.] Collazzo waiting for the police. She also observed [Petitioner] walking on the sidewalk, about two car lengths away. [Petitioner] saw her face and ran into a building on Fountain Avenue. [Ms.] Colon made an in-court identification of [Petitioner] as the man who robbed her and as the man she saw on Fountain Avenue after the robbery of [Mr.] Collazzo.

[Mr.] Islam testified that he picked up a customer around midnight on September 23, 2001[,] at the Trenton Train Station who told him to drive to Hamilton Township. When the cab reached Bond Street, the customer shifted the cab into park, turned off the engine, grabbed [Mr.] Islam around the neck and demanded money, threatening to shoot him. [Mr.] Islam gave him approximately $60 in cash and the robber fled into an alley. In court, however, [Mr.] Islam was unable to identify [Petitioner] as the man who robbed him.

[Mr.] Ramirez testified that a little after noon on September 25, 2001, he was assigned to pick up someone at Rider University. The customer asked to be taken to a hospital on Brunswick Avenue but directed him past the hospital and onto Bond Street. At that point, the customer asked for change for a $50 bill and [Mr.] Ramirez took out his money. When [Mr.] Ramirez looked back, the customer was pointing a black gun at him. The robber demanded money and "mentioned something about killing me." The robber, who was missing some upper teeth, took almost $1,000

and his cell phone, and ran into an alley on Martin Luther King Boulevard. During trial, at the State's request, the court directed [Petitioner] to face the jury and remove his dentures, revealing a gap in his upper teeth. [Mr.] Ramirez was not asked to make an in-court identification.

[Mr.] Collazzo testified that he picked up a customer a little after 2:00 p.m. on September 25, 2001[,] at the train station and proceeded to take him to Fountain Avenue when the customer asked for change from $10. [Mr.] Collazzo stated that as he pulled out change, the passenger "grab[bed] me from behind, he pulled me right here, he say give me your money or I'll shoot you." The robber pushed something against the back of his head that "felt cold. Something like a gun." [Mr.] Collazzo gave the robber between $35 to $45. The robber then opened the door and ran across the street. [Ms.] Colon arrived a few minutes later and recognized the man who had just left [Mr.] Collazzo's cab. In court, [Mr.] Collazzo positively identified the [Petitioner] as the robber, testifying that he was "sure 100 percent" in his identification.

*Id.* at *2–3.

After a four-day trial, the jury found Petitioner guilty on all charges specifically related to the robberies of Ms. Colon and Mr. Collazzo.[3] *Id.* at *1. That same jury acquitted Petitioner of all charges specifically related to the robberies of Mr. Islam and Mr. Ramirez. *Id.* At the end of trial, the trial court dismissed the unlawful possession of a firearm charge against Petitioner, *i.e.*, Count Nine of the indictment.. *Id.* On January 30, 2004, the trial court sentenced Petitioner to a twenty-year term of imprisonment, with a seventeen-year period of parole ineligibility. *Id.* Petitioner thereafter appealed his conviction and sentence to the New Jersey Superior Court, Appellate Division.

On direct appeal, Petitioner challenged, *inter alia*, the trial court's decision to admit into evidence Mr. Collazzo's in-court and out-of-court identifications of Petitioner. *Id.* at *7. Petitioner argued that because Mr. Collazzo's out-of-court pretrial identification of Petitioner

---

[3]  Specifically, Petitioner was convicted of committing second degree robbery, N.J. STAT. ANN. § 2C:15-1, and third-degree theft, N.J. STAT. ANN. § 2C:20-3a, for each of the robberies separately committed against Ms. Colon and against Mr. Collazzo.

was only "sixty-five percent reliable," it was "*per se* suggestive and involve[d] a *per se* probability of misidentification." (Pet'r's Appeal Br. at 26, ECF No. 7-6.) Petitioner claimed that had the trial court conducted a "full *Wade* hearing"[4] – as opposed to the limited *Wade* hearing which the trial court held August 19, 2003 – "that probability of misidentification would have been established, and the out-of-court and in-court identifications of the [Petitioner] . . . would have been excluded." (*Id.* at 26-27.)

The Appellate Division found this assertion to be without merit. *See Singleton*, 2005 WL 3556426, at *9. In affirming the trial court's admission of this evidence, the Appellate Division noted that "[t]he reliability of witness' testimony applies not to the admissibility of the testimony, but to its weight and credibility[.] An identification that is not positive still has probative value and is not excluded by the *Wade* standard." *Id.* at *9 (citation and internal quotation marks omitted).

Ultimately, the Appellate Division affirmed Petitioner's conviction on direct appeal, but remanded the matter for resentencing.[5] *Id.* The New Jersey Supreme Court denied certification of Petitioner's direct appeal on March 16, 2006. *State v. Singleton*, 895 A.2d 450 (N.J. 2006) (table).

---

[4] Petitioner suggests that a "full *Wade* hearing" would have included consideration of additional testimony from the victims themselves regarding their pretrial identifications of Petitioner. In that regard, Petitioner argues that Detective Pollard's pretrial testimony at the "limited *Wade* hearing" was insufficient for the trial court to make its determination regarding witnesses' respective pretrial identifications. (*Id.*)

[5] After a series of appeals and remands regarding sentencing, Petitioner ultimately received the same sentence that was originally imposed on him. *See, e.g.*, *State v. Singleton*, No. 02-05-0692, at 2-3 (N.J. Super. Ct. Law Div. Sept. 21, 2011) (available at ECF No. 7-12) (setting forth the relevant procedural history of Petitioner's sentencing-specific appeals culminating in Petitioner's final resentencing on April 24, 2009). For purposes of resolving Petitioner's current habeas claims, it is sufficient to note that this series of sentencing-related appeals are unrelated to – and in no way implicate – the substantive claims presented in Petitioner's current § 2254 petition.

On or about September 14, 2010, Petitioner, through counsel, filed an application for post-conviction relief ("PCR") in the Superior Court of New Jersey, Law Division (hereinafter, the "PCR court"). (*See* Pet'r's PCR Br., ECF No. 7-7.) In his PCR Petition, Petitioner argued that he received ineffective assistance of counsel and was deprived of his rights to a fair trial and due process of the law because, *inter alia*: (i) his "trial counsel failed to argue that the identification of Octavio Collazzo was tainted[;]" and (ii) "no argument was raised [by appellate counsel] that [Petitioner] was illegally arrested." (*Id.* at 14, 35 (capitalization in original omitted).)

On September 21, 2011, in a written opinion, the PCR court denied Petitioner's PCR application.[6] (*See* Sept. 21, 2011 Order, ECF No. 7-12.) *State v. Singleton*, No. 02-05-0692 (N.J. Super. Ct. Law Div. Sept. 21, 2011) (available at ECF No. 7-12). On September 5, 2014, the Appellate Division affirmed that denial. *State v. Singleton*, No. A-2264-11T3, 2014 WL 4375670, at *3 (N.J. Sup. Ct. App. Div. Sept. 5, 2014). On February 17, 2015, the New Jersey Supreme Court denied certification. *State v. Singleton*, 108 A.3d 634 (N.J. 2015) (table).

Petitioner filed his § 2254 petition on April 28, 2015. (ECF No. 1.) Petitioner's habeas petition raises two Grounds for relief, both of which are discussed in detail, *infra*. Respondents submitted their answer to Petitioner's habeas petition on August 10, 2015. (Answer, ECF No. 7.) Petitioner did not submit a traverse.

---

[6] It appears that the PCR court denied Petitioner's PCR petition without holding an evidentiary hearing. *See, e.g.*, *State v. Singleton*, No. A-2264-11T3, 2014 WL 4375670, at *3 (N.J. Sup. Ct. App. Div. Sept. 5, 2014) ("the PCR court correctly concluded that an evidentiary hearing was not warranted."); *but cf.* PCR court's Sept. 21, 2011 Order (indicating that the PCR court "heard argument on September 12, 2011.") (available at ECF No. 7-12).

III.    **STANDARD OF REVIEW**

Section 2254(a) permits a court to entertain only claims alleging that a person is in state custody "in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Petitioner has the burden of establishing each claim in the petition.  *See Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013).  Under 28 U.S.C. § 2254, as amended by the Anti–Terrorism and Effective Death Penalty Act, 28 U.S.C. § 2244 ("AEDPA"), federal courts in habeas corpus cases must give considerable deference to determinations of the state trial and appellate courts.  *See Renico v. Lett*, 599 U.S. 766, 772 (2010).

Where a state court adjudicated petitioner's federal claim on the merits,[7] a federal court "has no authority to issue the writ of habeas corpus unless the [state c]ourt's decision 'was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States,' or 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"  *Parker v. Matthews*, 567 U.S. 37, 40 (2012) (quoting 28 U.S.C. § 2254(d)[8]).  The petitioner

---

[7]    "For the purposes of Section 2254(d), a claim has been adjudicated on the merits in State court proceedings when a state court has made a decision that 1) finally resolves the claim, and 2) resolves th[at] claim on the basis of its substance, rather than on a procedural, or other, ground."  *Shotts v. Wetzel*, 724 F.3d 364, 375 (3d Cir. 2013) (citation and internal quotation marks omitted).

[8]    28 U.S.C. § 2254(d) reads, in its entirety, as follows:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
        (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
        (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

carries the burden of proof, and review under § 2254(d) is limited to the record that was before the state court that adjudicated the claim on the merits. *See Harrington v. Richter*, 562 U.S. 86, 98, 100 (2011).

"[C]learly established law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the *dicta*, of [the Supreme Court's] decisions," as of the time of the relevant state-court decision. *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). A decision is "contrary to" a Supreme Court holding within 28 U.S.C. § 2254(d)(1) if the state court "contradicts the governing law set forth in [the Supreme Court's] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of th[e Supreme] Court and nevertheless arrives at a [different] result." *Williams*, 529 U.S. at 405–06. Under the "'unreasonable application' clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. With regard to 28 U.S.C. § 2254(d)(1), a federal court must confine its examination to evidence in the record. *See Cullen v. Pinholster*, 563 U.S. 170, 180-81 (2011).

Where a petitioner seeks habeas relief, pursuant to § 2254(d)(2), on the basis of an erroneous factual determination by the state court, two provisions of AEDPA necessarily apply. First, AEDPA provides that "a determination of a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see Miller–El v. Dretke*, 545 U.S. 231, 240 (2005). Second, the statute precludes habeas relief unless the adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

A writ of habeas corpus under § 2254 shall not issue unless the petitioner has "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). In other words, "a petitioner must 'fairly present' all federal claims to the highest state court before bringing them in federal court." *Leyva v. Williams*, 504 F.3d 357, 365 (3d Cir. 2007) (citing *Stevens v. Delaware Corr. Ctr.*, 295 F.3d 361, 369 (3d Cir. 2002) (quoting *Whitney v. Horn*, 280 F.3d 240, 250 (3d Cir. 2002))). "This requirement ensures that state courts have an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights." *Leyva*, 504 F.3d at 365 (citing *United States v. Bendolph*, 409 F.3d 155, 173 (3d Cir. 2005) (quoting *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981))).

To the extent that Petitioner's constitutional claims are unexhausted, this Court can nevertheless deny them on the merits under 28 U.S.C. § 2254(b)(2). *See Taylor v. Horn*, 504 F.3d 416, 427 (3d Cir. 2007) ("because [this court] will deny all of [petitioner's] claims on the merits, [it] need not address exhaustion."); *Bronshtein v. Horn*, 404 F.3d 700, 728 (3d Cir. 2005) ("Under 28 U.S.C. § 2254(b)(2), [this court] may reject claims on the merits even though they were not properly exhausted, and [this court will] take that approach here.").

## IV.    DISCUSSION

Petitioner presents two grounds in support of his claim that he is entitled to habeas relief from this Court:

> Ground One:  Trial Judge Bill [Mathesius], along with Randolph Norris, Prosecutor of Mercer County[,] were not impartial, and further allowed Ms. Paula Pulgar[, who was not a witness at trial,] to lead a false identification, whereas she worked as a social worker[] at the jail prior to her employment in the [Mercer County] Prosecutor's Office and I worked as her social worker's aide pending my trial.

> Ground Two:  I was illegally arrested by [the] Trenton Police Department whereas I was asked to volunteer.  However, I became handcuffed, and escorted into the police [station].  The arrest warrant became issued and signed thereafter.  It was further signed by a supervisor [as] opposed to the courts.

(Pet. at ¶ 12, ECF No. 1.)

The foregoing assertions represent the only claims and arguments raised by Petitioner in support of his request for habeas relief from this Court. In other words, the legal arguments and factual assertions presented by Petitioner in support of Grounds One and Two of his habeas petition are set forth, in their entirety, above.

## A.    Ground One – Paula Pulgar's Identification of Petitioner

On Ground One, Petitioner's primary argument is that a non-witness, Paula Pulgar, impermissibly identified Petitioner to Octavio Collazzo as his assailant in the courthouse hallway shortly before Mr. Collazzo testified at trial on August 21, 2003.[9]  (*See* Pet'r's Aug. 10, 2010

---

[9]    Petitioner, in his introductory sentence in Ground One, appears to suggest that the judge presiding over his criminal trial, Bill Mathesius, and the assistant prosecutor at trial, Randolph Norris, "were not impartial," as evidenced by the fact that they improperly allowed Ms. Pulgar to "lead a false identification."  (Pet. at ¶ 12, Ground One, ECF No. 1.)  For the reasons detailed *infra*, Petitioner's claim that Ms. Pulgar "[led] a false identification" – even if true – does not entitle Petitioner to habeas relief.

To the extent Petitioner – through this peripheral assertion of bias – is attempting to claim that Judge Mathesius and Assistant Prosecutor Norris engaged in a more generalized pattern of improper bias during trial, that claim likewise fails.

First, Petitioner has failed to plead any facts and has failed to present any evidence – in the record or otherwise – which provides additional context or otherwise supports his conclusory allegation that Judge Mathesius and Assistant Prosecutor Norris "were not impartial."  This Court is precluded from granting habeas relief based on such a vague, generalized assertion. *McFarland v. Scott*, 512 U.S. 849, 856 (1994) (noting that "[h]abeas corpus petitions must meet heightened pleading requirements" and that "[f]ederal courts are authorized to dismiss summarily any habeas petition that appears legally insufficient on its face") (citations omitted); *see also* Rule 2(c) of the Rules Governing Section 2254 Cases at Rule 2(c)(1), (2) (habeas petitions must "specify all the grounds for relief" and "state the facts supporting each ground.").

Alternatively, even assuming that this Court were to conduct an independent review of the record of state court proceedings to determine what actions of the trial judge and assistant prosecutor could be construed as "not impartial," there is no basis in the record for this Court to award Petitioner habeas relief in this context

As an initial matter, it must be noted that Assistant Prosecutor Norris, as an advocate for the State, had an inherently partisan role in Petitioner's criminal trial.  Moreover, the only specific claim Petitioner raised in the state courts regarding Assistant Prosecutor Norris' actions during trial, concerned his repeated references to Petitioner as "Mr. Slick" during summation.  *See, e.g.*, *Singleton*, 2005 WL 3556426, at *7.  The Appellate Division, in its decision affirming

PCR Br. at 18, ECF No. 7-7.)  During his subsequent trial testimony on that date, Mr. Collazzo stated that he was "sure 100 percent" that Petitioner was the individual who robbed him on September 25, 2001.  (*See* Aug. 21, 2003 Trial Tr. 148:17, ECF No. 7-18.)  Petitioner, in Ground One of his habeas petition, appears to claim that but-for Ms. Pulgar's improper out-of-court-identification, Mr. Collazzo would not have identified Petitioner as his perpetrator at trial, and thus, that Mr. Collazzo's in-court identification of Petitioner should not have been presented to the jury for consideration.

---

Petitioner's conviction on direct appeal, found that while "the prosecutor's description of [Petitioner] as 'Mr. Slick' was clearly inappropriate . . . because of the overwhelming evidence supporting a finding of guilty [those] remarks did not deprive [Petitioner] of his right to a fair trial."  *Id.*  The PCR court subsequently determined that this claim was procedurally barred in light of that decision.  *Singleton*, No. 02-05-0692, at 9.  Petitioner does not now set forth any facts or legal arguments regarding the prosecutor's references to him as Mr. Slick, and does not raise a stand-alone claim of prosecutorial misconduct; instead, Petitioner asserts only that Assistant Prosecutor Norris was "not impartial."  This vague, conclusory allegation regarding the assistant prosecutor is not a basis to grant Petitioner habeas relief.

As for Judge Mathesius, it appears that during PCR proceedings, Petitioner claimed that Judge Mathesius improperly predetermined Petitioner's sentence.  (*See* Pet'r's PCR Br. 45-47, ECF No. 7-7.)  In that connection, Petitioner included a list of generalized one-sentence allegations regarding the judge's behavior at trial vis-à-vis the "Miscellaneous Arguments" section of his PCR brief.  (*See id.* at 48-50.)  In its opinion denying PCR relief to Petitioner, the PCR court noted that "[t]here is nothing in the record to support [Petitioner's] allegation that Judge Mathesius violated [] his own duty to impose a fair and uniform sentence" and further found that "although Judge Mathesius may have made stern comments towards Petitioner, the comments could not be construed as blatant resentment and disregard[.]"  *Singleton*, No. 02-05-0692, at 11, 12.  Petitioner did not further pursue any of these claims regarding Judge Mathesius in his PCR appeal.  Petitioner's conclusory assertion of judicial bias is, therefore, unsupported be discounted by this Court in light of Petitioner's failure to present any evidence which rebuts the foregoing factual determinations.  *See* 28 U.S.C. § 2254(e)(1) ("a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.");  *accord Rountree v. Balicki*, 640 F.3d 530, 541-42 (3d Cir. 2011).

Petitioner formally raised the issue of Ms. Pulgar's alleged out-of-court identification during PCR proceedings.[10] There, Petitioner correctly noted that his trial counsel "failed to argue [to the trial court] that . . . Ms. Colon pointed at the [Petitioner] as he entered the courtroom." (Pet'r's Aug. 10, 2010 PCR Br. at 19, ECF No. 7-7.)  Petitioner asserted that as a result, he was denied his rights to a fair trial and due process of law, and that he received ineffective assistance of trial counsel.  (*See id.* at 14-25.)  The Appellate Division provided the following analysis on these claims in its opinion denying Petitioner's PCR appeal:

> The robbery victims included Ms. Colon and Mr. Collazzo. After reporting the robbery to the police, [Mr.] Collazzo picked out [Petitioner] from a photographic line-up. Before trial, the court held a *Wade* hearing [at which Mr.] Collazo testified that he was sixty-five to seventy-five percent certain [Petitioner] was the perpetrator.  The trial court determined [Mr.] Collazzo's out-of-court identification was admissible.
>
> . . . .
>
> Before testifying at trial, [Mr.] Collazzo was in the hallway just outside of the courtroom.  [Petitioner] claims he observed [Ms.] Colon, who was also in the hallway, point out [Petitioner] to [Mr.] Collazzo as [Petitioner] was entering the courtroom.  [Petitioner] also overheard Paula Pulgar, an employee of the Mercer County Prosecutor's Office, tell [Mr.] Collazzo that [Petitioner] was "the perpetrator."  Once inside of the courtroom, [Petitioner] alerted his trial counsel of what transpired in the hallway, but his counsel did not request a second *Wade* hearing.
>
> At trial, [Mr.] Collazzo testified that when he picked out [Petitioner] from a photographic line-up, his level of certainty that [Petitioner] was the perpetrator was sixty-five to seventy-five percent.  At trial, however, [Mr. Collazzo] claimed he was one-hundred percent certain [Petitioner] was the person who robbed him, explaining that, a week before trial, he reviewed photographs in the Prosecutor's Office and saw [Petitioner's] photograph.  At that time, [Mr. Collazzo] became one-hundred percent convinced [Petitioner] was the perpetrator.  [Mr.] Collazzo further testified he was "clear" [Petitioner] was the one who had committed the robbery and claimed he would recognize [Petitioner] "between a million people."  [Mr.]

---

[10]   Petitioner also informally presented this claim when he addressed the trial court during his January 30, 2004, sentencing hearing.  (*See* Sentencing Hr'g Tr. 17:19-18:2, ECF No. 7-22.)

Collazzo denied [Ms.] Colon pointed out the [Petitioner] to him in the hallway or communicated with him while he waited to testify. [Mr.] Collazzo was not questioned at trial about whether he had heard [Ms.] Pulgar say anything while in the hallway.

. . . .

[On appeal, Petitioner] contends [Mr.] Collazzo's testimony that he was one-hundred percent certain [Petitioner] was the perpetrator was not the product of [Mr.] Collazzo's own recollection but of [Ms.] Pulgar's and [Ms.] Colon's "impermissible suggestiveness." [Petitioner] is *not* alleging that the photographs he viewed a week before the trial improperly tainted [Mr.] Collazzo's memory.

. . . .

. . . [W]e assume [Petitioner] advised his trial attorney of [Ms.] Pulgar's and [Ms.] Colon's actions before [Mr.] Collazzo testified. It is undisputed his attorney did not ask for a [second] *Wade* hearing during the trial. Notwithstanding, we are satisfied from our review of the record that [Petitioner] failed to make a *prima facie* showing of ineffectiveness of trial counsel . . . .

Specifically, [Mr.] Collazzo testified that, one-week before trial, he became one-hundred percent certain that [Petitioner] was the person who robbed him, well before the time [Ms.] Colon and [Ms.] Pulgar allegedly pointed [Petitioner] out as the perpetrator. Therefore, [Mr.] Collazzo's in-court identification of [Petitioner] was not the product of any suggestion made by [Ms.] Colon or [Ms.] Pulgar. Further, his testimony regarding the circumstances in which he became more certain was subject to cross-examination. A [second] *Wade* hearing would not have changed the outcome of the trial.

*Singleton*, 2014 WL 4375670, at *1-3 (case citations omitted).

ii.    *The Facts Alleged by Petitioner in Support of Ground One Are Contrary to the Factual Determinations Made by the Appellate Division*

As set forth above, the Appellate Division, in its 2014 decision denying Petitioner's PCR appeal, expressly determined that "[Mr.] Collazzo's in-court identification of [Petitioner] was not the product of any suggestion made by . . . [Ms.] Pulgar." *Id.* at *3. Petitioner has not presented this Court with *any* argument, factual or legal, as to why the Appellate Division's determination is contrary to law, and thus, this Court must presume the correctness of the Appellate Division's determination that Mr. Collazzo's in-court identification of Petitioner was not the result of Ms.

Pulgar's out-of-court actions. *See* 28 U.S.C. § 2254(e)(1) ("a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."); *accord Rountree v. Balicki*, 640 F.3d 530, 541-42 (3d Cir. 2011); *Simmons v. Beard*, 590 F.3d 223, 231 (3d Cir. 2009)).

Accordingly, the Court finds that Petitioner is barred from obtaining habeas relief pursuant to Ground One because the factual underpinnings which support his principal Ground One argument, *i.e.*, that Mr. Collazzo identified Petitioner as his perpetrator at trial because of Ms. Pulgar's improper out-of-court-identification of Petitioner to Mr. Collazzo, is contradicted by the express factual finding of the Appellate Division that "[Mr.] Collazzo's in-court identification of [Petitioner] was not the product of any suggestion made by . . . [Ms.] Pulgar." *Singleton*, 2014 WL 4375670. at *3.

### iii. *Relevant Supreme Court Precedent Regarding Witness Identification*

Assuming that Ground One of Petitioner's habeas petition nonetheless remains viable, the United States Supreme Court's decision in *Perry v. New Hampshire*, 565 U.S. 228 (2012), sets forth the specific constitutional provisions implicated by Ms. Pulgar's purported identification of Petitioner to Octavio Collazzo in the hallway outside of the trial courtroom shortly before Mr. Collazzo testified at trial:[11]

---

[11] This Court recognizes that the Appellate Division, in its 2014 decision affirming the denial of Petitioner's PCR petition, considered Petitioner's assertion that Ms. Pulgar improperly identified him as an ineffective assistance of counsel claim and therefore employed the analysis set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). This Court also notes that the Appellate Division's resolution of this claim appears to turn on its finding that the alleged failure of Petitioner's trial counsel to raise the issue of Ms. Pulgar's impermissible identification to the trial court did not prejudice Petitioner's defense such that the Petitioner was "deprive[d] of a fair trial . . . whose result is reliable." *Strickland*, 466 U.S. at 687.

The Constitution . . . protects a defendant against a conviction based on evidence of questionable reliability, not by prohibiting introduction of the evidence, but by affording the defendant means to persuade the jury that the evidence should be discounted as unworthy of credit. Constitutional safeguards available to defendants to counter the State's evidence include the Sixth Amendment rights to counsel, *Gideon v. Wainwright*, [372 U.S. 335, 343–345] (1963); compulsory process, *Taylor v. Illinois*, [484 U.S. 400, 408–409] (1988); and confrontation plus cross-examination of witnesses, *Delaware v. Fensterer*, [474 U.S. 15, 18–20] (1985) (per curiam). Apart from these guarantees, we have recognized, state and federal statutes and rules ordinarily govern the admissibility of evidence, and juries are assigned the task of determining the reliability of the evidence presented at trial. *See Kansas v. Ventris*, [556 U.S. 586, 594 n.*] (2009) ("Our legal system . . . is built on the premise that it is the province of the jury to weigh the credibility of competing witnesses."). Only when evidence "is so extremely unfair that its admission violates fundamental conceptions of justice," *Dowling v. United States*, [493 U.S. 342, 352] (1990) (internal quotation marks omitted), have we imposed a constraint tied to the Due Process Clause. *See, e.g.*, *Napue v. Illinois*, [360 U.S. 264, 269] (1959) (Due process prohibits the State's "knowin[g] use [of] false evidence," because such use violates "any concept of ordered liberty.").

*Perry*, 565 U.S. at 237.

In *Perry*, several police officers responded to a report of an individual breaking into cars in the parking lot adjoining an apartment building. *Id.* at 233. One of the responding officers discovered Barion Perry in that parking lot holding two car stereo amplifiers in his hands. *Id.* Another responding officer went into the adjacent apartment building and spoke with Nubia Blandon, who the police understood may have witnessed the car break-ins. *Id.* at 234. When that officer asked Ms. Blandon to specifically describe the person she saw breaking into cars, she pointed out of her window towards Mr. Perry, who was then standing in the parking lot next to the officer detaining him. *Id.* Mr. Perry made a pre-trial motion to suppress Ms. Blandon's

---

That being said, Petitioner does not now claim vis-à-vis Ground One that his trial counsel was ineffective; instead, he simply asserts that Ms. Pulgar improperly "[led] a false identification." (Pet. at ¶ 12, ECF No. 1.) As such, *Strickland* has limited bearing on this Court's analysis of Petitioner's Ground One claim, notwithstanding that the last reasoned decision of the state court regarding Ms. Pulgar's purported improper identification was ultimately analyzed under the rubric of *Strickland*.

identification, arguing that "[Ms.] Blandon witnessed what amounted to a one-person showup in the parking lot . . . which all but guaranteed that she would identify [Mr. Perry] as the culprit." *Id.* at 234-35.  The trial court denied that motion, finding that because Ms. Blandon's identification of Mr. Perry was not the result of an unnecessarily suggestive identification procedure used by police, the reliability of Ms. Blandon's testimony was for the jury to consider. *Id.* at 235.  The Supreme Court affirmed.  *Id.* at 248.

In so doing, the *Perry* Court ruled that the "introduction of [Ms.] Blandon's eyewitness testimony, without a preliminary judicial assessment of its reliability, did not render Perry's trial fundamentally unfair."  *Id.*  The Court further held "that the Due Process Clause does not require a preliminary judicial inquiry into the reliability of an eyewitness identification when the identification was not procured under unnecessarily suggestive circumstances arranged by law enforcement."  *Id.*  The Court additionally noted that the Due Process Clause, when implicated:

> requires courts to assess, on a case-by-case basis, whether improper police conduct created a "substantial likelihood of misidentification."  [*Neil v. Biggers*, 409 U.S. 188, 201 (1972); *see Manson v. Brathwaite*, 432 U.S. 98, 116 (1977)]. "[R]eliability [of the eyewitness identification] is the linchpin" of that evaluation . . . [*Brathwaite*, 432 U.S. at 114].  Where the "indicators of [a witness'] ability to make an accurate identification" are "outweighed by the corrupting effect" of law enforcement suggestion, the identification should be suppressed.  *Id.*, at 114, 116. Otherwise, the evidence (if admissible in all other respects) should be submitted to the jury.

*Perry*, 565 U.S. at 239.

The "factors to be considered" in evaluating the "ability [of a witness] to make an accurate identification" for purposes of presenting such evidence to the jury include "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation."  *Braithwaite*, 432

U.S. at 114 (citing *Biggers*, 409 U.S. at 199-200); *see also Wallace v. D'Ilio*, No. 2:14-cv-67 (SRC), 2015 WL 6702363, at *14 (D.N.J. Oct. 21, 2015) ("[*Brathwaite*] dictates that convictions based on eyewitness identification at trial, following a pretrial identification by photograph, will only be set aside if the photo identification procedure was 'so impermissibly suggestive to give rise to a very substantial likelihood of irreparable misidentification.'") (quoting *Simmons v. United States*, 390 U.S. 377, 384 (1968)).

      *iv.*     *Application*

As a preliminary matter, there is no factual basis for the Court to find that Petitioner's alleged encounter with Mr. Collazzo in the courtroom hallway – even if true – was prearranged by law enforcement or the prosecution, or anything other than "an accidental courthouse encounter." *Dennis v. D'Ilio*, No. 1:14-cv-6474 (RMB), 2015 WL 6758228 (D.N.J. Nov. 5, 2015). Thus, without any involvement by law enforcement, Petitioner cannot claim that Ms. Pulgar's alleged out-of-court identification of Petitioner implicated Petitioner's rights under the Due Process Clause. *See Perry*, 565 U.S. at 248 ("the Due Process Clause does not require a preliminary judicial inquiry into the reliability of an eyewitness identification when the identification was not procured under unnecessarily suggestive circumstances arranged by law enforcement.").

Even if Petitioner could show that Ms. Pulgar's purported identification was the result of suggestive circumstances arranged by law enforcement, the facts on the record, set forth *infra*, demonstrate that the "indicators of [Mr. Collazzo's] ability to make an accurate identification" were not "'outweighed by the corrupting effect' of law enforcement suggestion." *Brathwaite*, 432 U.S. at 114, 116. As such, Mr. Collazzo's in-court identification was properly presented to the jury for purposes of determining the reliability of that evidence. *Perry*, 565 U.S. at 239;

*Biggers*, 409 U.S. at 199 (1972) (the court must consider the "totality of the circumstances" to determine whether the identification was reliable even if the procedure was suggestive); *see also Dennis*, 2015 WL 6758228, at *13 ("Even if this Court assumes the State created a situation where the victim could view the defendants in the courtroom the day before the victim's testimony, if the victim's identification is reliable, the testimony need not be excluded.").

          *a.    The Evidence Presented at Trial Demonstrates That Mr. Collazzo's In-Court Identification of Petitioner was Sufficiently Reliable*

At trial, Mr. Collazzo testified that his shift on the day he was robbed, *i.e.*, September 25, 2001, began at approximately 1:30 pm (*see* Aug. 21, 2003 Trial Tr. 175:8-17, ECF No. 7-18); that Petitioner was his second customer of the day (*id.* at 175:20-25); that Mr. Collazzo picked up Petitioner near the Trenton train station (*id.* at 148:19-21); that he proceeded to drive Petitioner to the 200 block of Fountain Avenue (*id.* at 149:3-13); that Petitioner sat in the backseat of the cab and appeared to be talking on a cell phone during that drive (*id.* at 149:18-150:24); and that upon arriving at the 100 block of Fountain Avenue "sometime after [2:00 pm,]" Petitioner grabbed Mr. Collazzo from behind, placed what Mr. Collazzo believed to be a gun against his head, and said "give me your money or I'll shoot you." (*Id.* at 151:23-155:8.)  Mr. Collazzo stated that after he gave Petitioner the money on his person, Petitioner exited the cab and disappeared behind some abandoned houses.  (*Id.* at 156:4-9.)  Mr. Collazzo testified that in the next few minutes, prior to police arriving on the scene, he again saw Petitioner, this time in an alleyway, at a distance of between 75 and 100 feet.  (*Id.* at 156:6-20.)  Furthermore, Mr. Collazzo indicated that the individual who robbed him weighed about 275 pounds, was at least six feet tall, and had little grey hairs in his beard and in his hair.[12]  (*Id.* at 157:6-16.)

---

[12]   Petitioner does not claim that his physical characteristics differ from the description provided by Mr. Collazzo of his assailant at trial.

Mr. Collazzo's testimony therefore makes clear that he picked up his assailant in broad daylight, that he had sufficient opportunity to observe that individual as he drove him through Trenton, and that he had an additional opportunity to see his perpetrator from a distance of between 75 and 100 feet after he was robbed. The foregoing testimony therefore suggests that Mr. Collazzo was capable of making an accurate identification of his assailant for purposes of presenting that evidence to the jury. *See Brathwaite*, 432 U.S. at 114 (setting forth the "factors to be considered" in evaluating the "ability [of a witness] to make an accurate identification.") (citing *Biggers*, 409 U.S. at 199-200). It is against this factual backdrop that Mr. Collazzo testified at trial that he was "sure 100 percent" that Petitioner was the individual who robbed him. (Aug. 21, 2003 Trial Tr. 148:17-18, ECF No. 7-18.)

Moreover, Mr. Collazzo's in-court identification of Petitioner was not the only evidence linking Petitioner to the robbery committed against Mr. Collazzo on September 25, 2001. Indeed, Mr. Collazzo, himself, previously identified Petitioner during a photographic line-up on September 23, 2002, at which time he indicated that he was 65% to 75% sure about that identification. *See*, *e.g.*, *Singleton*, 2005 WL 3556426, at *1. Furthermore, another robbery victim, Theresa Colon, testified to witnessing Petitioner near the scene of the robbery committed against Mr. Collazzo on September 25, 2001. (*See* Aug. 21, 2003 Trial Tr. 107:3-113:22.) *Accord Singleton*, 2005 WL 3556426, at *3 ("[w]hen [Mr.] Collazzo called for help, [Ms.] Colon drove to his location on Fountain Avenue and . . . observed [Petitioner] walking on the sidewalk, about two car lengths away. [Petitioner] saw her face and ran into a building on Fountain Avenue. [Ms.] Colon made an in-court identification of [Petitioner] . . . as the man she saw on Fountain Avenue after the robbery of [Mr.] Collazzo.").

This evidence provides additional support for the proposition that Mr. Collazzo's identification – regardless of whether Ms. Pulgar did or did not identify Petitioner to Mr. Collazzo in the hallway outside of the courtroom – was sufficiently reliable for the trial court to allow its presentation to the jury. *Perry*, 565 U.S. at 232 ("if the indicia of reliability are strong enough to outweigh the corrupting effect of the police-arranged suggestive circumstances, the identification evidence ordinarily will be admitted, and the jury will ultimately determine its worth."); *accord Braithwaite*, 432 U.S. at 116 ("evidence with some element of untrustworthiness is customary grist for the jury mill.").

### b. *Defense Counsel's Cross-Examination of Mr. Collazzo*

Moreover, Petitioner – through counsel – received an opportunity to question Mr. Collazzo about the reliability of his in-court identification of Petitioner during cross-examination. (*See* Aug. 21, 2003 Trial Tr. 166-170, ECF No. 7-18.) Indeed, Petitioner's trial counsel asked Mr. Collazzo how he could be 100% sure regarding his in-court identification of Petitioner where Mr. Collazzo was only 65% to 75% confident that Petitioner was the individual who robbed him when Mr. Collazzo identified Petitioner in a set of police-arranged photos on September 23, 2002, and where the actual robbery occurred nearly two years before Mr. Collazzo identified Petitioner in court. (*Id.* at 167:8-169:20.) Defense counsel also specifically questioned Mr. Collazzo about seeing Petitioner in the courtroom hallway shortly before testifying at trial, and whether that interaction affected his in-court identification. (*Id.* at 170:25-171:8.) In response, Mr. Collazzo acknowledged that he and Ms. Colon were sitting in the hallway outside of the courtroom shortly before Mr. Collazzo testified, but expressly denied that Ms. Colon pointed Petitioner out to him or had otherwise discussed the case. (*Id.* at 171:5-8.)

It is clear that Petitioner's trial counsel asked the foregoing questions with an eye towards undermining the reliability of Mr. Collazzo's in-court identification of Petitioner. These questions therefore demonstrate that Petitioner received the opportunity to – and in fact did attempt to – persuade the jury that Mr. Collazzo's in-court identification of him should have been discounted as untrustworthy through cross-examination, the "device best suited to determine the trustworthiness of testimonial evidence." *Watkins v. Sowders*, 449 U.S. 341, 349 (1981); *see also Kitchen v. Beyer*, No. 2:88-cv-3550 (AMW), 1989 WL 200945, at *3 (D.N.J. Dec. 28, 1989) ("even if the [identification] procedures . . . could be considered suggestive, [the fact that] the record establishe[d] that there was adequate cross-examination" provided additional support that the "identification was sufficiently reliable to justify being sent to the jury.").

In sum, the facts of record demonstrate: (i) that Mr. Collazzo's in-court identification of Petitioner was sufficiently reliable to be presented to the jury for consideration;[13] (ii), and that Petitioner received the opportunity to cross-examine Mr. Collazzo regarding the reliability of that identification. There is therefore no basis for this Court to conclude that Petitioner's constitutional rights were infringed through the admission of this evidence. For these same reasons, the Appellate Division's finding that "[a second] *Wade* hearing [regarding Ms. Pulgar's alleged August 21, 2003 out-of-court identification of Petitioner to Mr. Collazzo] would not have changed the outcome of the trial," *Singleton*, 2014 WL 4375670. at *3, is neither contrary to, nor

---

[13]  The Appellate Division's determination that Petitioner's trial counsel was not ineffective based on that attorney's failure to raise the issue of Ms. Pulgar's out-of-court identification is therefore neither contrary to, nor an unreasonable application of, *Strickland* and its progeny. *See Johnston v. Love*, 940 F. Supp. 738, 776 (E.D. Pa. 1996) ("[c]ounsel cannot be faulted for failing to pursue meritless or futile objections."), *aff'd* 118 F.3d 1576 (3d Cir.), *cert. denied*, 522 U.S. 972 (1997); *Wallace*, 2015 WL 6702363, at *8 (D.N.J. Oct. 21, 2015) (same); *Jennings v. Rogers*, No. 3:05-cv-2968 (JAP), 2006 WL 1977434 (D.N.J. July 12, 2006) (same); *see also Bolender v. Singletary*, 16 F.3d 1547, 1573 (11th Cir.), *cert. denied*, 513 U.S. 1022 (1994) (failure to raise non-meritorious issues does not constitute ineffective assistance of counsel).

an unreasonable application of, established Supreme Court precedent. *See Braithwaite*, 432 U.S. at 112 ("*Wade* and its companion [witness identification] cases reflect the concern that the jury not hear eyewitness testimony unless that evidence has aspects of reliability.") (citing *Wade*, 388 U.S. 218 (1967)); *accord United States v. Stevens*, 935 F.2d 1380, 1386 (3d Cir. 1991) ("A *Wade* hearing . . . concerns not the in-court identification, but only the pre-trial identification.") (citation omitted). As such, the Court finds that the admission of Mr. Collazzo's in-court identification of Petitioner for consideration by the jury is not a basis to grant habeas relief.

### B.    Ground Two – Petitioner's Claims of Improper Arrest

Petitioner asserts that he is entitled to habeas relief in light of the facts and circumstances surrounding his arrest alleged in Ground Two of his habeas petition. More specifically, Petitioner claims that habeas relief is appropriate because: (i) he was arrested prior to the execution of the warrant authorizing his arrest; (ii) the warrant for his arrest was invalid because it was signed by a "supervisor" and not by a judicial officer; and (iii) he voluntarily agreed to go with police officials to the headquarters of the Trenton Police Department and was not formally arrested until *after* he arrived there. (*See* Pet. at ¶ 12, ECF No. 1.)

Although Petitioner fails to reference any specific constitutional provision, it is clear that Petitioner's Ground Two claims are rooted in his Fourth Amendment right "to be secure . . . against unreasonable searches and seizures." U.S. Const. amend IV. *See, e.g.*, *Goins v. Warren*, No. 2:13-cv-4057 (DRD), 2015 WL 1292528, at *4 (D.N.J. Mar. 20, 2015) (characterizing § 2254 habeas petitioner's claim that police forged the judicial signature on his arrest warrant as a "Fourth Amendment arrest challenge.").

Petitioner formally presented the improper arrest-related arguments during his PCR proceedings.[14] (*See* Pet'r's Aug. 10, 2010 PCR Br. at 35-36, ECF No. 7-7.) By way of the "Verified Petition of [Petitioner]" appended to the end of his PCR brief, Petitioner asserted that "[e]ven though there was testimony elicited that I was arrested on October 12, 2001, after preparation of the arrest warrant on October 11, 2001, this is not so as I was arrested prior to issuance of such warrant." (*See* Pet'r's Aug. 10, 2010 PCR Br. at Verified Petition ¶ 5, ECF No. 7-7.) The PCR court rejected Petitioner's improper arrest-related allegations, explaining:

> Petitioner claims that . . . that he was arrested illegally by the Trenton Police Department. As support for this allegation, Petitioner only offers his Verified Petition as evidence, and he claims that he was arrested prior to the issuance of the arrest warrant.
>
> A review of the record, however, reflects that the original complaint was issued on October 11, 2001 and that the [Petitioner] was arrested on October 12, 2001. There is nothing in the record to suggest that Petitioner was arrested before the issuance of the warrant, and Petitioner has not provided the court with any evidence to support this argument.[15]

*Singleton*, No. 02-05-0692, at 9 (citation to trial court record omitted).

Petitioner declined to further pursue his improper arrest-related arguments in his PCR appeal. *See, e.g.*, *Singleton*, 2014 WL 4375670.

Here, Petitioner does not argue that he did not have the opportunity to present his Fourth Amendment improper arrest-related claims to the state court; rather, Petitioner seeks relief based

---

[14] Petitioner also informally raised his arrest-related claims when he addressed the trial court during his sentencing hearing on January 30, 2004. (*See* Sentencing Hr'g Tr. 16:17-19, ECF No. 7-22 ("I was locked up on [] October 12th, I was kept in the police station three days before I even became charged.").)

[15] The factual findings of the PCR court are supported by substantial evidence in the record. (*See, e.g.*, Aug. 21, 2003 Trial Tr. 21:11-24:21, ECF No. 7-18 (Detective Pollard testifying, after reviewing the copy of Petitioner's arrest warrant that was admitted into evidence, that the warrant was effective as of October 11, 2001, and that Petitioner was arrested on October 12, 2001).)

upon the assertion that his "Fourth Amendment claims were decided incorrectly or incompletely by the New Jersey courts." *Marshall v. Hendricks*, 307 F.3d 36, 82 (3d Cir. 2002). However, Petitioner's argument in this respect is foreclosed by *Stone*.

In *Stone v. Powell*, 428 U.S. 465 (1976), the United States Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *See id.* at 495-96. As explained by the Third Circuit in *Hubbard v. Jeffes*, 653 F.2d 99 (3d Cir. 1981), *Stone* ultimately stands for the broader proposition that "when a state prisoner raises a Fourth Amendment violation in a habeas petition, a federal court may not consider the merits of the claim if the state tribunal had afforded the petitioner 'an opportunity for a full and fair litigation' of his claim." *Id.* at 102–03 (citing *Stone* at 494); *see also Marshall*, 307 F.3d at 82 ("An erroneous or summary resolution by a state court of a Fourth Amendment claim does not overcome the [*Stone*] bar") (citations omitted).

In accordance with *Stone* and its progeny, and in light of the facts detailed above, this Court is barred from considering Petitioner's arrest-related claims in this § 2254 proceeding. *See Gilmore v. Marks*, 799 F.2d 51 (3d Cir. 1986); *Hubbard*, 653 F.2d at 103; *see also Goins*, 2015 WL 1292528, at *4 ("*Stone v. Powell* forecloses federal court consideration of [petitioner's] Fourth Amendment arrest challenge [stemming from petitioner's claim that police forged the judicial signature on his arrest warrant] in this § 2254 proceeding.").

For the reasons set forth above, Ground Two of Petitioner's habeas petition fails to provide a basis for this Court to grant him federal habeas relief.

### C.    Certificate of Appealability

Pursuant to 28 U.S.C. § 2253(c), a petitioner may not appeal from a final order in a habeas proceeding where that petitioner's detention arises out of his state court conviction unless he has "made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327. For the reasons expressed above, jurists of reason could not disagree that Petitioner's claims are lacking in merit. Therefore, no certificate of appealability will issue pursuant to 28 U.S.C. § 2253(c)(1)(B).

## V.    <u>CONCLUSION</u>

For the reasons expressed in this Opinion, the Court denies the Petitioner's § 2254 petition with prejudice and denies a certificate of appealability. An appropriate Order follows.


Date: March 29, 2018                                      <u>Freda L. Wolfson</u>
                                                          Freda L. Wolfson
                                                          United States District Judge